IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| HOPSON, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Case No. WDQ-04-3842 |
| CITY OF BALTIMORE, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**REPORT AND RECOMMENDATION**

The above-referenced case was referred to the undersigned for review of plaintiff Charles Carter's Motion for Summary Judgment for Violation of Civil Court Order (ECF No. 311) and Motions to Request the Issuance of Subpoenas (ECF Nos. 320, 334, 335), pursuant to 28 U.S.C. § 636 and Local Rule 301.6. (ECF Nos. 323, 338.) For the reasons discussed herein and those stated on the record on July 23, 2014, I respectfully recommend that plaintiffs' Motions (ECF Nos. 311, 320, 334, 335) be denied.

This case originated in December 2004 with the claims of individual plaintiffs who alleged that the Baltimore City Police Department ("BPD") and the Mayor and City Council of Baltimore engaged in a pattern and practice of discrimination against African American police officers employed by BPD. (Complaint, ECF No. 1.) On June 18, 2009, fifteen of the individual plaintiffs, including Mr. Charles Carter ("plaintiff"), entered into a Settlement Agreement with BPD and the Mayor and City Council of Baltimore (ECF No. 306), which Judge Quarles approved on July 13, 2009 (ECF No. 307) ("Settlement Agreement").

On October 16, 2013, plaintiff Charles Carter ("plaintiff"), acting pro se, filed a Motion for Summary Judgment for Violation of Civil Court Order ("Summary Judgment Motion"). (ECF No. 311.) Plaintiff alleges that BPD and the Mayor and City Council of Baltimore violated the confidentiality provision of the Settlement Agreement by disclosing plaintiff's personnel record and disciplinary history to his potential employers. (ECF No. 311-1 at 7-8.) BPD filed an Opposition (ECF No. 318), arguing that no evidence existed to suggest that BPD violated the Settlement Agreement, and plaintiff failed to prove a causal connection between BPD's actions and plaintiff's inability to procure employment. (ECF No. 318 at 2-3, 5-6.) The Mayor and City Council of Baltimore also filed an Opposition (ECF No. 319), arguing that plaintiff did not assert that the Mayor and City Council directly violated the Settlement Agreement, that they were not bound by the provision allegedly violated, and that they lacked direct supervision over BPD's personnel matters. (ECF No. 319-1 at 4-10.)

Plaintiff replied to the defendants' Oppositions (ECF Nos. 321, 322) and I directed BPD to provide further briefing as to the effective dates of the Settlement Agreement, the applicable legal standard for plaintiff's Summary Judgment Motion, and the consent forms BPD references in its Opposition (Order, ECF No. 324). BPD filed a supplemental filing on March 4, 2014. (ECF No. 325.) In that filing, BPD noted that the Settlement Agreement was in effect until March 31, 2014,[1] (ECF No. 325 at 1-2), and included the two release forms plaintiff signed: 1) an "Authorization for Release of Information" to the State of Maryland Department of Public

---

[1] According to the Settlement Agreement, it was to "remain in effect during the term of the Consultant as described in Section VII herein, including any extension." (ECF No. 306 at 3.) The term of the Consultant is described as "a term of three years beginning upon execution of the Consultant's contract, extendable by up to an additional two years if the Consultant reports at the end of three years that there is a continuing substantive problem…" (ECF No. 306 at 5.) BPD provided a copy of the initial contract between BPD and consultant Dr. James L. Outtz from March 31, 2010 to March 31, 2013. (Ex. A of Def.'s Supp. Letter, ECF No. 325-1.) It also provided a Letter from City Solicitor George A. Nilson containing an agreement between BPD representative Mark Grimes and consultant Dr. Outtz extending the agreement for an additional year to March 31, 2014. (Ex. B to Def.'s Supp. Letter, ECF No. 325-2.) At the hearing, BPD confirmed that the Settlement Agreement terminated on March 31, 2014 and was no longer in effect.

Safety and Correctional Services ("Public Safety Release"), signed by plaintiff before a witness on June 11, 2013; and 2) an "Authorization for Release of Information/Waiver of Liability" to the Baltimore County Sheriff's Department ("Sheriff's Release"), signed by plaintiff on March 12, 2008. (ECF Nos. 325-3, 325-4.) Plaintiff responded to BPD's supplemental filing. (ECF No. 328.)

Plaintiff also filed a Motion to Request the Issuance of Subpoenas (ECF No. 320) on November 27, 2013 and subsequently filed two more Motions to Request the Issuance of Subpoenas (ECF Nos. 334, 335) on June 9, 2014 (collectively, "Subpoena Motions"). In his Subpoena Motions, plaintiff sought to obtain documents from a variety of third-parties that allegedly performed background checks when plaintiff applied for employment. (ECF Nos. 320, 334, 335). BPD opposed these motions, arguing that the court should not permit plaintiff to subpoena BPD records because plaintiff already possesses a copy of his personnel file, which is the extent of BPD's records regarding plaintiff. (ECF No. 339.) Plaintiff filed a Reply to BPD's Opposition. (ECF No. 340.)

In addition to reviewing all of the relevant pleadings and exhibits, I reviewed the Settlement Agreement (ECF No. 306) and Judge Quarles' Order approving the Settlement Agreement (ECF No. 307). I held a hearing on July 23, 2014, at which time I heard argument from plaintiff and counsel for BPD and the City of Baltimore and admitted additional exhibits from both parties. (ECF Nos. 342, 343, 344.) At the hearing, plaintiff argued that, notwithstanding BPD's receipt of the Public Safety Release, BPD should have limited the release of his employment information to his dates of service. Plaintiff maintains that the Public Safety Release did not waive any of his privacy rights or grant permission to release his records. The Mayor and City of Baltimore argued that there is no evidence of a breach by the Mayor and City

and that they cannot be responsible for ensuring that any other party does not breach the contract. BPD's primary argument is that it did not violate the Settlement Agreement because it, as required by the Settlement Agreement, followed its standard practice for requests for employment history (ECF No. 306 at 6), that is, to release the former employee's record if presented with a valid release. BPD also argued it had no authority to alter plaintiff's employment record because it is barred from expunging employees' records without a written request and, even with a written request, it cannot expunge an employee's record if the employee has charges that were sustained. BPD maintains that plaintiff did not file a written request and, even if he had, his records were not eligible for expungement under the Maryland Law Enforcement Officers' Bill of Rights ("LEOBR"). BPD also noted that the record lacks any evidence of a causal connection between any action by BPD and plaintiff's inability to find a job, particularly in light of negative information regarding plaintiff that is readily available in the public record.

At the conclusion of the hearing, I detailed my findings on the record which support my recommendation that plaintiff's Summary Judgment Motion (ECF No. 311) and Subpoena Motions (ECF Nos. 320, 334, 335) be denied. The following briefly summarizes the more extensive findings I made on the record: [2]

1. Plaintiff signed two forms permitting the release of his employment records from BPD: the June 11, 2013 Public Safety Release (ECF No. 325-3) and the March 12, 2008 Sheriff's Release (ECF No. 325-4).

---

[2] Plaintiff filed his Motion as a Motion for Summary Judgment for Violation of Civil Court Order, arguing that there are no genuine disputes of material fact and that he is entitled to judgment as a matter of law. (ECF No. 311 at 1.) BPD argues that the court should evaluate plaintiff's Summary Judgment Motion under the civil contempt standard of "clear and convincing evidence," which requires a showing of a knowingly violation of a court order. (ECF No. 318 at 4-5; ECF No. 325 at 1-4, citing Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir. 2000).) The Mayor and City of Baltimore, alternatively, argue enforcement of the Settlement Agreement is a breach of contract action, with a "preponderance of the evidence" standard. (ECF No. 319-1 at 1 n.1; see also Mathis v. Hargrove, 166 Md. App. 286, 310-311; n.5 (2005).) Under either of these standards, plaintiff's Summary Judgment Motion fails.

2. Only the Public Safety Release (ECF No. 325-3) is at issue because the Sheriff's Release (ECF No. 325-4) predated the Settlement Agreement.

3. The Settlement Agreement provides:

   > The BPD reiterates its standard practice, and agrees it will be followed with regard to Individual Plaintiffs, and that, except to the extent required by law, the BPD will respond to requests for employment history and information by disclosing dates of services only, and will not disclose any Individual Plaintiff's disciplinary history or whether the end of service was as a result of termination or resignation or otherwise.

   (ECF No. 306 at 6.)

4. Plaintiff's Public Safety Release clearly authorized release of all records as follows:

   > I Charles Henry Carter [] hereby authorize a review and full disclosure of all records, or any part thereof, concerning myself to any duly authorized agent of the Department of Public Safety and Correctional Services, whether the said records are public or private…I authorize the full and complete disclosure of…employment or reemployment records including background investigation reports, efficiency ratings, accidents or injuries sustained in the course of employment.

   (ECF No. 325-3.)

5. In accordance with the Settlement Agreement, BPD followed its standard practice which is to require a release before any personnel information, other than dates of service, is disclosed. Upon receiving plaintiff's Public Safety Release that explicitly authorized full disclosure of all records, BPD released plaintiff's full personnel records to State of Maryland Department of Public Safety and Correctional Services in compliance with the Settlement Agreement and BPD's standard practices.

6. Even if the Settlement Agreement could be construed to require BPD to respond to every request for personnel records by providing only the employee's dates of service, plaintiff's written release, which was signed subsequent to the Settlement

5

Agreement, is sufficiently explicit to modify the Settlement Agreement and permit the release of his records. See Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc., 165 Md. App. 262, 277-278 (2005) (finding that a written agreement may be modified by subsequent oral agreement).

7. Although plaintiff did not directly raise this issue, BPD argued at the hearing that the Settlement Agreement did not require expungement; rather, it required BPD to follow existing legal requirements.  The Settlement Agreement provides:  "The Defendants have asserted that they are barred, both legally and by the BPD's own historical practices, from expunging any of the disciplinary records of the Plaintiffs herein except in accordance with the criteria of Section 3-110 of the Maryland Law Enforcement Officers' Bill of Rights." (ECF No. 306 at 6.)

8. The Maryland LEOBR requires that an individual must submit a written request to BPD to expunge their disciplinary record.  (Defs' Ex. A4, ECF No. 343 at 6, citing Md. Code Ann., Public Safety § 3-110.)  Plaintiff did not submit a written request to expunge his records.

9. Even if plaintiff had submitted such a request, his entire disciplinary record would not have been expunged because he was found guilty of several infractions, making them ineligible for expungement under the Maryland LEOBR.  (Defs' Ex. A4, ECF No. 343 at 6, citing Md. Code Ann., Public Safety § 3-110.)

10. In sum, there is no evidence that BPD or the Mayor and City Council violated the Settlement Agreement.

11. Alternatively, even if plaintiff were able to prove that BPD breached the Settlement Agreement, plaintiff has not demonstrated any causal connection between any action

6

by the BPD and plaintiff's inability to secure employment. Indeed, the letter plaintiff received from the Maryland Department of Public Safety and Correctional Services did not reject him from employment. The letter stated "you maybe consider [sic] for an Agent I position when the need arises." (Court Ex. 2, ECF No. 342 at 3.)

12. Plaintiff has not specifically alleged that the Mayor and City Council of Baltimore independently violated the Settlement Agreement but instead suggests that the Mayor and City Council should have prevented BPD's disclosure of plaintiff's records. This theory has no basis in fact or law and, therefore, is rejected.

13. Plaintiff's Subpoena Motions seek the issuance of subpoenas to a variety of entities to which plaintiff apparently submitted employment applications. Plaintiff's theory for these subpoenas is that they may result in the production of records establishing that BPD has violated the Settlement Agreement by disclosing plaintiff's personnel records to these entities.

14. The only evidence of BPD's release of plaintiff's records before the Court is BPD's release of plaintiff's personnel record as explicitly authorized by the plaintiff's Public Safety Release. There is absolutely no evidence in the record that BPD otherwise disclosed plaintiff's records to other third parties.

15. While the court has retained jurisdiction to enforce the Settlement Agreement, the court should not permit the use of this court's subpoena power to search for evidence of hypothetical wrongdoing by BPD. Accordingly, the court should decline to issue the subpoenas requested by plaintiff.

Based on the foregoing, I recommend that plaintiff's Summary Judgment Motion (ECF No. 311) and Subpoena Motions (ECF Nos. 320, 334, 335) be denied.

I also direct the Clerk to mail a copy of this Report and Recommendation to plaintiff at the address listed on the docket.

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Date:   8/1/14                                               /s/                            
                                                         Beth P. Gesner
                                                         United States Magistrate Judge