IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

LOUIS H. HOPSON, *et al.*,
* 
 Plaintiffs,
* 
  v.         CIVIL NO.: WDQ-04-3842
* 
CITY OF BALTIMORE, *et al.*, *
* 
 Defendants.   *

* * * * * * * * * * * * *

MEMORANDUM OPINION

On June 18, 2009, Charles H. Carter, and others, entered into a Settlement Agreement with the Baltimore Police Department ("BPD") and the Mayor and City Council of Baltimore ("City"). Carter, acting *pro se*, filed a motion for summary judgment against the BPD and the City (collectively, the "Defendants") for violating the Settlement Agreement.[1]  Pending is Carter's objection to Magistrate Judge Beth P. Gesner's Report and Recommendation ("R&R").  For the following reasons, the Court will adopt Judge Gesner's R&R.

---

[1] Carter also filed motions for the issuance of subpoenas.  ECF Nos. 320, 334, 335.  However, Carter did not object to Judge Gesner's recommendation that those motions be denied.  *See* ECF Nos. 346 at 21, 345 at 7 ¶¶ 13-15.  The Court will adopt Judge Gesner's recommendation on those motions.

I.   Background

On December 6, 2004, Carter, and others, sued the BPD and the City for engaging in a pattern and practice of discrimination against African American police officers. *See* ECF No. 1 ¶¶ 1-2.  On June 18, 2009, Carter, and 14 other plaintiffs, entered into a Settlement Agreement with the Defendants. *See* ECF No. 306 at 3.  On July 13, 2009, this Court approved the Settlement Agreement. *See* ECF No. 307.  The Settlement Agreement provides:

> 1.   Confidentiality: Plaintiffs' personnel files and the disciplinary proceedings reflected therein are confidential and limited from disclosure by various laws. The BPD reiterates its standard practice,[2] and agrees it will be followed with regard to Individual Plaintiffs, and that, except to the extent required by law, the BPD will respond to requests for employment history and information by disclosing dates of service only, and will not disclose any Individual Plaintiff's disciplinary history or whether the end of service was as a result of termination or resignation or otherwise.

ECF No. 306 at 8.[3]

---

[2] An affidavit submitted by BPD responding to Judge Gesner's request for briefing on the consent forms, ECF No. 324, stated "It is the practice of the Baltimore Police Department to require a written authorization signed by the officer from any entity wishing to review a sworn officer's personnel file," ECF No. 325-5 at 1.

[3] The Settlement Agreement was to "remain in effect during the term of the Consultant [hired to monitor racial disparities in BPD's disciplinary system] as described in Section VII herein, including any extension." ECF No. 306 at 3.  The Consultant's initial term was three years, extendable by up to two additional

On January 19, 2012, the Maryland Transit Administration

("MTA") sent Carter a letter informing him that MTA had denied

his employment application "based upon [his] failure to meet MTA

standards during the background investigation." ECF No. 311-6

at 1.  In a February 22, 2012 letter, MTA stated:

> According to our records, we received your blank
> Personal History Statement (PHS) and request to
> withdraw on July 2, 2011. Although you sent in your
> request, the department conducts a preliminary
> background check based on information supplied in your
> Pre-Investigation Questionnaire . . . . Although you
> withdrew from the process, the information you
> provided or failed to provide in the Pre-Investigation
> Questionnaire and our background checks disqualified
> you from further consideration.

*Id.*

On June 11, 2013, Carter signed an Authorization for

Release of Information to the Department of Public Safety and

Correctional Services ("DPSCS") ("Public Safety Release").  *See*

ECF No. 325-3 at 23.[4]  The Public Safety Release provides:

> I[,] Charles Henry Carter[,] [. . .] hereby authorize
> a review and full disclosure of all records, or any
> part thereof, concerning myself to any duly authorized
> agent of the [DPSCS], whether the said records are
> public or private[.] The intention of this

---

years if necessary.  *Id.* at 5.  BPD's agreement with the
Consultant ran until March 31, 2013, and was extended an
additional year.  *See* ECF Nos. 325-1, 325-2.  Accordingly, the
Settlement Agreement terminated on March 31, 2014.  *See* ECF Nos.
325-2, 345 at 2 n.1.

[4] Previously, on March 12, 2008, Carter signed an Authorization
for Release of Information/Waiver of Liability authorizing full
disclosure of his records to an agent of the Baltimore Sheriff's
Department ("Sheriff's Release").  *See* ECF No. 325-4.

> authorization is to provide information which will be
> utilized for investigation resource material regarding
> employment with the Department. . .
>
> I authorize the full and complete disclosure of
> . . . employment and reemployment records including
> background investigation reports, efficiency ratings,
> accidents or injuries sustained in the course of
> employment; and any and all records of any arrest,
> conviction, or incarceration.

*Id.*

On June 18, 2013, BPD's Human Resources Section sent Carter a letter stating that "there have been no inquiries into your employment history with [BPD] from any outside agencies or entities . . . since . . . April 2005." ECF No. 311-10 at 1.

On August 22, 2013, the DPSCS sent Carter a letter informing him that he had not been selected for a position as a Parole and Probation Agent I, but may be "consider[ed] for an Agent I position when the need arises." ECF No. 311-11 at 1.

On August 27, 2013, Carter received a letter from Mark H. Grimes, Esq., Chief Legal Counsel for the City of Baltimore, Department of Law. *See* ECF No. 318-1. Grimes informed Carter that his personnel folder contained "two separate consent forms" wherein Carter "authorized an agent from two different law enforcement organizations to review [his] entire personnel

4

folder." *Id.* Therefore, Grimes stated, "BPD allowed [Carter's] folder to be reviewed on two occasions." *Id.*[5]

On October 16, 2013, Carter moved for Summary Judgment for Violation of Civil Court Order. ECF No. 311. On November 21, 2013, the BPD and the Mayor and City Council of Baltimore separately opposed the motion. ECF Nos. 318, 319. On December 2, 2013, Carter replied. ECF Nos. 321, 322.

On December 6, 2013, Carter's motion was referred to U.S. Magistrate Judge Gesner. ECF No. 323. On July 23, 2014, Judge Gesner held a hearing. ECF No. 341. On August 1, 2014, Judge Gesner issued an R&R recommending that Carter's motion be denied. ECF No. 345. On August 11, 2014, Carter objected to the R&R. ECF No. 346.

II.  Analysis

A.  Standard of Review

Under the Magistrate Judges Act, 28 U.S.C. § 636, a district judge may designate a magistrate judge to conduct hearings (if necessary) and report proposed findings of fact and recommendations for action on a dispositive motion. *See* 28

---

[5] BPD submitted two *Baltimore Sun* online newspaper articles containing negative information about Carter. *See* ECF No. 318-2 (Article dated November 17, 2001: "City officer in shooting suspended: Man who shot teen was legally drunk, police sources say . . . ."); ECF No. 318-3 (Article dated October 22, 1996: "Officer charged with rape of his cousin: Police Department once fired 14-year veteran.").

U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); *see also* Local Rule 301.5(b) (D. Md. 2011).

A party aggrieved by a magistrate judge's R&R about a dispositive motion must file "specific written objections to the proposed findings and recommendations" within 14 days. Fed. R. Civ. P. 72(b)(2). The reviewing judge "shall make a *de novo* determination of those portions of the [magistrate judge's] report . . . to which objection is made." 28 U.S.C. § 636(b)(1)(C). The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations," and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

B.   Carter's Motion[6]

Carter asserts the Defendants violated the Settlement

Agreement's Confidentiality provision by providing potential

employers with his full personnel file instead of only his dates

---

[6] Carter captioned his motion as a Motion for Summary Judgment
for Violation of Civil Court Order under Federal Rules of Civil
Procedure 56 (governing summary judgment) and 70(e) (governing
contempt actions).  *See* ECF No. 311 at 1.  BPD argues that the
Court should apply the civil contempt standard of "clear and
convincing evidence," which requires a showing of a knowing
violation of a court order.  *See* ECF No. 325 at 1-4; *Ashcraft v.
Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000).  The City
argues that enforcement of the Settlement Agreement is a breach
of contract action, requiring a "preponderance of the evidence"
standard.  *See* ECF No. 319-1 at 1 n.1, 4; *Mathis v. Hargrove*,
888 A.2d 377, 391 n.5 (Md. Ct. Spec. App. 2005).
   A breach of contract claim requires an independent action
over which this Court does not have jurisdiction under the terms
of the Settlement Agreement.  *See Peacock v. Thomas*, 516 U.S.
349, 355 (1996) ("In a subsequent lawsuit involving claims with
no independent basis for jurisdiction, a federal court lacks the
threshold jurisdictional power that exists when ancillary claims
are asserted in the same proceeding as the claims conferring
federal jurisdiction.") (*citing Kokkonen v. Guardian Life Ins.
Co. of Am.*, 511 U.S. 375, 380-81 (1994)).
   However, "a district court's ancillary jurisdiction to
manage its proceedings, vindicate its authority, and effectuate
its decrees provides such an independent jurisdictional basis to
enforce a settlement agreement if the parties' obligation to
comply with the terms of the settlement agreement ha[s] been
made part of the order of dismissal."  *Marino v. Pioneer Edsel
Sales, Inc.*, 349 F.3d 746, 752 (4th Cir. 2003) (internal
citations and quotation marks omitted).  Here, the Court's July
13, 2009 dismissal order incorporated by reference the terms of
the Settlement Agreement and expressly provided that "the Court
shall retain jurisdiction of this matter to enforce the terms of
the Settlement Agreement."  ECF No. 307.  Accordingly, this
Court has jurisdiction to enforce the terms of the Settlement
Agreement and will construe Carter's motion as a motion for
contempt.  To the extent that Carter raises fresh claims of
discrimination in BPD's disciplinary system or in BPD's
performance of the Settlement Agreement, the Court's
jurisdiction in this matter does not extend to those claims.

of service.  *See* ECF No. 311-1 at 7.  BPD asserts it did not
violate the Settlement Agreement because Carter's personnel file
was provided to two prospective employers based on Carter's
execution of the Public Safety and Sheriff's Releases
(collectively, the "Releases").  *See* ECF No. 318 at 5.  The City
asserts that the Confidentiality provision applied to BPD, not
the City, and there is no evidence it violated the
Confidentiality provision.  *See* ECF No. 319-1 at 4-5.

The Court may impose sanctions for civil contempt "to
coerce obedience to a court order or to compensate the
complainant for losses sustained as a result" of non-compliance
with the court order.  *See In re General Motors Corp.*, 61 F.3d
256, 258 (4th Cir.1995) (internal citations and quotation marks
omitted).  To establish civil contempt, a movant must show by
clear and convincing evidence:

> (1) the existence of a valid decree of which the
> alleged contemnor had actual or constructive
> knowledge; (2) that the decree was in the movant's
> favor; (3) that the alleged contemnor by its conduct
> violated the terms of the decree, and had . . . at
> least constructive knowledge[] of such violations; and
> (4) that the movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir.2000)
(internal citations and quotation marks omitted).  The purpose
of civil contempt sanctions is remedial.  *See Cromer v. Kraft
Foods N. Am., Inc.*, 390 F.3d 812, 822 (4th Cir.2004); *Buffington
v. Baltimore Cnty.*, Md., 913 F.2d 113, 133 (4th Cir.1990).

There is no doubt that the Settlement Agreement was a valid decree executed in Carter's favor.  The issues here are whether the BPD or the City knowingly violated the terms of the Settlement Agreement and whether Carter has shown harm as a result of the alleged violation.

      1.   The City

Understandably, Carter has not alleged facts showing that the City violated the Settlement Agreement's Confidentiality provision: the Confidentiality provision is directed only at the BPD: "BPD reiterates its standard practice . . ."; "BPD will respond to requests for employment history and information . . . ."  ECF No. 306 at 8.[7]  Carter apparently seeks to hold the City vicariously liable for BPD's conduct, asserting that the City "factually and actually" has control over the BPD and, despite notice of BPD's alleged violations, failed to take remedial action.  *See* ECF No. 346 at 6 ¶ 2, 7 ¶ 3.  Under Maryland law, however, the City is not vicariously liable for the BPD's actions.  *See, e.g., Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 549 (D. Md. 2003) (no *respondeat superior*

---

[7] Carter acknowledges BPD's central role in assisting prospective employers conducting background investigations.  *See* ECF No. 311-1 at 10 ("All background investigation checks lead to the organization in which the Plaintiff had last been employed for well over 23 years, the BPD."); *id.* at 23 ("The one thing that all of the mentioned job[s] have in common is the facts that they have to go through the [BPD] . . . for a background investigation check.").

liability of Baltimore City for acts of BPD officers).   Thus,
Carter has not shown the City knowingly violated the Settlement
Agreement.

      2.   BPD

Carter asserts the Settlement Agreement provision that "BPD
will respond to requests for employment history and information
by disclosing dates of service only" removes requests for his
employment history from BPD's "standard practice," which is, to
release the employee's full record when presented with a valid
release.  ECF No. 346 at 8; *see also* ECF No. 325-5 at 1.[8]  BPD
argues the Settlement Agreement required it to follow its
"standard practice."  ECF No. 345 at 4; *see also* ECF No. 318 at
5.

The terms of the Settlement Agreement appear to be in
conflict.  The Settlement Agreement states that the BPD will
follow its standard practice (full disclosure upon presentation
of release) ("standard practice provision") *and* that BPD will
only disclose dates of service ("dates of service provision").
*See* ECF No. 306 at 6. It follows that, absent a valid release,
the BPD could not lawfully provide full disclosure, and would be
limited to disclosing dates of service.  Here, however, Carter
has executed the Public Safety and Sheriff's Releases.

_____

[8] At the July 23, 2014 hearing, Carter argued that the Public
Safety Release did not waive his rights respecting the release
of his records.  *See* ECF No. 345 at 3.

Determining whether there is evidence of a violation, therefore, is a matter of contract interpretation: the Court must determine whether, by signing the Releases, Carter waived the dates of service provision, permitting the BPD to follow the standard practice provision. *See United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 238 (1975) ("[A] consent decree or order is to be construed for enforcement purposes basically as a contract.").

Under Maryland law, contract interpretation is a question of law. See *Wash. Metro. Area Transit. Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 234 (4th Cir. 2007).[9] Contract provisions may be waived by subsequent agreement or conduct notwithstanding any contract provision that modifications be in writing. *See Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.*, 885 A.2d 381, 390 (Md. Ct. Spec. App. 2005); *see also Freeman v. Stanbern Const. Co.*, 106 A.2d 50, 54-55 (Md. 1954) (clauses may be waived by implication or agreement).[10]

---

[9] Maryland law applies, because Maryland is the forum state, and the parties agreed in the Settlement Agreement that Maryland law would apply. *See Ground Zero Museum Workshop v. Wilson*, 813 F.Supp.2d 678, 696 (D. Md. 2011); *Henry v. Gateway, Inc.*, 979 A.2d 287, 297 (Md. Ct. Spec. App. 2009) ("Maryland appellate courts have long recognized the ability of parties to specify in their contracts which state's law will apply."); ECF No. 306 at 8-9 (Choice of Law provision).

[10] "Those who make a contract may unmake it." *Freeman*, 106 A.2d at 54-55 (*quoting Beatty v. Guggenheim Exploration Co.*, 122 N.E. 378, 381 (NY 1919).

By signing the Public Safety Release authorizing "full disclosure of all records" to DPSCS almost four years *after* he signed the Settlement Agreement, Carter arguably waived the dates of service provision, permitting the BPD to provide full disclosure.  Accordingly, Carter has not shown that BPD knowingly violated the Settlement Agreement.

However, even if it had, Carter has not shown resultant harm.  The August 22, 2013 letter from DPSCS to Carter did not state that he was denied employment because of negative information provided by BPD, and stated it would consider him for a future position.  *See* ECF No. 311-11.[11]

The Sheriff's Release predates the Settlement Agreement. *See* ECF No. 325-4.[12]  By failing to withdraw the Sheriff's Release, arguably Carter impliedly waived--as to the Baltimore Sheriff's Department--the dates of service provision.  Carter

---

[11] Moreover, freely available online information about Carter's employment history (accurate or not) may have motivated DPSCS's (or any other potential employer's) decision not to hire Carter. *See* ECF Nos. 318 at 6-7, 318-2, 318-3.

[12] The August 27, 2013 letter from Grimes to Carter stated that BPD had authorized two agents from two different law enforcement organizations--presumably, the DPSCS and the Baltimore Sheriff's Department--to review his file pursuant to the two releases signed by Carter. *See* ECF No. 318-1.  The letter does not state when those agents reviewed Carter's file.  Because the June 18, 2013 letter from BPD's Human Resources Section stated that no inquiries into Carter's employment history had occurred since April 2005, ECF No. 311-10 at 1, it appears that both inquiries referred to by Grimes occurred between June 18, 2013 and August 27, 2013, and, thus, after the Settlement Agreement was signed.

has not presented evidence that he was denied employment by the Baltimore Sheriff's Department (whether on the basis of an impermissible viewing of his employment history or otherwise). Thus, the requirement that Carter show harm has not been met.[13]

Accordingly, the Court finds that Carter has not presented clear and convincing evidence of a knowing violation of the Settlement Agreement by BPD; nor has he shown resultant harm.

III. Conclusion

For the reasons stated above, Judge Gesner's R&R will be adopted. Carter's motion for summary judgment for violation of a civil court order, construed as a motion for contempt of a court order, will be denied.

_____9/16/14_____
Date

_____
William D. Quarles, Jr.
United States District Judge

---

[13] Carter also has not shown a knowing violation or harm with respect to MTA's January 19, 2012 employment letter of rejection. The letter merely stated that Carter "fail[ed] to meet MTA standards during the background investigation," and did not refer to information provided by BPD. ECF No. 311-6 at 1. Carter has not shown that MTA contacted BPD or that BPD released information to MTA.